SOUTHERN RY. CO. v. CLARK.

(Circuit Court of Appeals, Sixth, Circuit.   June 16, 1916.)

No. 2689.

1. TRIAL ☞296(2)—INSTRUCTIONS—CURE OF ERROR.

In an action by a passenger, hurt in a railroad wreck, where the railroad company set up a release, the passenger asserted that the release was procured through misstatements by the railroad company's physician and claim agent, and that when he told of his sufferings he was assured that the injuries were trivial. The court charged that the issue as to the validity of the release was one of fraud or mutual mistake, and at the request of defendant charged that the claim was barred if the passenger understandingly settled his claim and was not misled or deceived in any way, though at the time of the settlement he was hurt more seriously than he thought, having previously charged that if the passenger was injured as he claimed, and if he. was misled by defendant's doctor and agent into believing that such injuries were trivial and would soon pass away, the release would not prevent recovery for such injuries if it. was not intended that the settlement should include them. *Held* that, in view of the whole of the charge, error in misstating the issue was cured.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 708; Dec. Dig. ☞296(2).]

2. TRIAL ☞178—DIRECTED VERDICT—RIGHT TO.

In determining whether a verdict should be directed, the court should consider the evidence in the light most favorable to plaintiff.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 401–403; Dec. Dig. ☞178.]

3. RELEASE ☞58(6)—VALIDITY—EVIDENCE.

Where an injured passenger claimed that a release which he signed shortly after the accident was induced by fraud and misrepresentation of defendant's physician and claim agent, the question *held* under the evidence for the jury.

[Ed. Note.—For other cases, see Release, Cent. Dig. § 114; Dec. Dig. ☞58(6).]

4. RELEASE ☞24(1)—VALIDITY—FRAUD.

Fraud which enters into the execution of an instrument may be proven in law as well as in equity, and a release, unless a sealed instrument, may be attacked in an action in which it is set up by .proof of the fraud.

[Ed. Note.—For other cases, see Release, Cent. Dig. §§ 41–44; Dec. Dig. ☞24(1).]

5. RELEASE ☞24(1)—ADDITIONAL SEALS—EFFECT.

As Shannon's Code Tenn. § 3213, declares that the addition of a ̄ private seal to an instrument of writing shall not affect its character, a release of personal injuries under seal does not acquire any peculiar sanctity by reason of the seal, and may be impeached in an action in which it is set up by proof of fraud.

[Ed. Note.—For other cases, see Release, Cent. Dig. §§ 41–45; Dec. Dig. ☞24(1).]

In Error to the District Court of the United States for the Western District of Tennessee; John E. McCall, Judge.

Action. by John Clark against the Southern Railway Company. There was a judgment for plaintiff, and defendant brings error. Affirmed.

Clark was a passenger on one of defendant's roads in Tennessee, and suffered injuries through derailment of the train on October 20, 1913.   He re-

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

covered a verdict of $1,000, and defendant prosecutes error. The declaration charges defendant with negligence through certain alleged facts and circumstances, and in setting out his injuries plaintiff alleges among other things: "He was injured in his legs and ankles; he was ruptured." Defendant filed two pleas: (a) Not guilty; and (b) accord and satisfaction—alleging as to the latter, that on October 20, 1913 (the date of derailment and injury), the matter of defendant's liability was adjusted and settled between the parties for the sum of $10, which was paid and accepted in full settlement of all rights or claims against defendant, and of any further liability of plaintiff. Plaintiff's replication to the plea of accord and satisfaction alleges that the settlement and acquittal were procured by defendant's claim agent immediately after the casualty and "while plaintiff was shocked and excited and when he was in such mental condition as that he did not know or realize that he was injured, which condition of plaintiff was known or ought to have been known to the defendant's agent and plaintiff therefore avers that said settlement or acquittal was procured by fraud or entered into by mutual mistake and at a time when plaintiff was incapable of entering into a valid contract." The replication further alleges that plaintiff tenders into court the sum ($10) so received, together with interest thereon. Defendant joined issue on this plea.

Liability of defendant for the negligence alleged, as we understand it, was admitted. The issue as to the hernia claimed to have resulted from the injury was found in favor of plaintiff, and defendant acquiesced in this finding of fact. Defendant relied on the settlement alleged in the second plea, and the evidence appearing here concerns this settlement. At the conclusion of all the evidence defendant moved for a directed verdict, on the grounds: (a) That in this action at law the settlement made by the defendant was final and conclusive; (b) that the undisputed evidence was that there was no fraud perpetrated on the plaintiff in the matter of the execution of the contract of settlement; (c) that in this action at law the settlement could not be rescinded, but the sole remedy would be by proceeding in equity; and (d) that on the undisputed evidence the plaintiff could not even maintain a bill in equity to rescind. The motion was overruled and exception reserved.

Caruthers Ewing, of Memphis, Tenn., for plaintiff in error.
M. J. Anderson, of Memphis, Tenn., for defendant in error.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

WARRINGTON, Circuit Judge (after stating the facts as above). [1] We have a case where the real damage has been ascertained to have been $1,000, which in terms was released for $10. There is testimony tending to show that the release was executed: (1) Upon plaintiff's complaint of injury to one of his ankles and in his loins and groin; (2) upon an attending physician's statement to plaintiff—made after treatment of the ankle and some examination as to the other injury complained of—that "you are just mostly scared and sick at the stomach," and "you will soon get over that," which apparently satisfied plaintiff, since he testified, "I just taken his word for that"; (3) upon the claim agent's statement—made after plaintiff had told him he was injured in his "ankle and back"—that "if you are injured, you will get over it in a few days," but, according to plaintiff's testimony, this agent stated "the doctor says that you wasn't—you ain't hurt much; you are mostly scared and will soon get over it"; and (4) upon an offer of $10 for injury to plaintiff's ankle. If the injury complained of as to plaintiff's loins and groin had been of the character stated by the physician and claim agent, the release given would have been fair; but, as we have seen, it is in effect admitted that one of plaintiff's injuries re-

sulted in hernia. Concededly, the release is in writing and in terms is broad enough to include the injury resulting in hernia, as well as the injury to the ankle, in consequence of the negligent derailment.

In the charge to the jury, the trial court stated that the issue joined upon the replication was one of fraud or mutual mistake, and, after submitting the question whether plaintiff was or was not in fact ruptured, said:

"I shall hold and charge you that if you find that this rupture proximately resulted from the accident and the man didn't know that he was hurt there, or if he knew that he had some trouble in that region and was misled by the statements of the agents of the defendant company, then he would be entitled to recover for the injury to his side. But the burden is on him to prove that he was hurt; that is, that he had the rupture, and that he was misled by the doctor or the agent, and that his uneasiness in that direction was allayed by their statement that it would soon pass away. That they may have done either honestly or on purpose. That is to say, they may have known or believed that it would not pass away and that it was not cause(d) by the mere shaking up and mere matter of nausea, and if they did know it was not so caused, then they misled him; or they may not have known that the injury had been sustained in the side and may have said to him and in good faith that it was a merely temporary ailment and would soon pass away. But, if they did either one, in point of fact, and they didn't intend to include for that injury in the side in the settlement they made with him, then they would still be liable, if the man was so injured. I don't know whether I am making myself very clear or not, but I am trying to present the case here so that you will understand that the settlement made would not bar this plaintiff from recovering for the injury to the side unless the parties intended and understood that they were including the injury in the side within the terms of that settlement and the plaintiff was not misled about it to any extent by the defendant."

It is urged that the trial judge misinterpreted the issue and submitted the case to the jury on the theory that the question presented by the pleadings was whether the parties intended to make a full settlement or only one for the damages arising from injury to plaintiff's ankle; counsel's insistence being that no issue was tendered except the question, "Was the plaintiff at the time he signed the release capable of making a valid contract?" The court, as we have seen, stated the issue to be one of fraud or mutual mistake, the exact language being:

"The defense is that of not guilty, the general issue, and further a special defense that the defendant had settled with the plaintiff for whatever injury he had sustained by reason of the derailment of this train, and that the defendant is not liable to him for anything further.

"There is a replication filed by the plaintiff to that plea, in which he sets up that it was obtained by fraud or mutual mistake, and upon that replication, the defendant joins issue."

It was not necessary to restate the issue, but its alternative character—fraud or mistake—appears to have resulted in some confusion in the course of the charge. For example, the plaintiff was declared entitled to recover for the injury to his side, if at the time the release was given he did not know of such injury, or if the intention was not to include that injury in the release, or if the understanding was so to include the injury and plaintiff was not misled in that respect. The real meaning of all this, however, seems to have been made clear by a special instruction which was given at defendant's request after the general charge was concluded; it was stated in this instruction that:

"If the plaintiff understandingly settled his claim and was not misled or deceived by the defendant in any way, his action is barred, even though at the time of the settlement he was hurt more seriously than he thought."

It is true that this instruction as submitted ended with the following clause, which was stricken out: "and in a particular that he did not know." But that clause did not, while the next preceding and granted clause did, describe plaintiff's condition; for the record stands as a practical admission that shortly before the settlement plaintiff told the physician of the pains he was suffering in his loins and groin. The excluded words, therefore, were not applicable; and, moreover, the granted clause "even though at the time of the settlement he [plaintiff] was hurt more seriously than he thought," qualified and rendered harmless the words of the general charge, "if you find that this rupture proximately resulted from the accident and the man didn't know that he was hurt there"; for the special instruction as given is bottomed on the idea that the action was barred unless plaintiff had in some way been "misled or deceived by the defendant," whether at the time of the settlement he knew or did not know the nature or extent of the injury of which he had complained. Again, plaintiff's "intention" concerning this injury, as well as his concurrence in any "understanding" had in reference to it, might well have been brought about by the representation of the physician and its repetition by the claim agent. This instruction was the last expression of the court's view of the situation and also that of the parties in regard to the controlling issue of fact to be submitted to the jury; it was indicative of the very atmosphere of the trial and was calculated to clarify the situation; its effect was distinctly to reduce the issue to that of the alleged fraud. We may therefore assume that but for this instruction the judgment would have to be reversed; but we are convinced that any error occurring in the respects pointed out was thus substantially cured. We are strengthened in this view by the fact that the dominant issue traceable through the general charge and practically applied was the feature of fraud; this is shown by the frequent and purposeful use which was made of the word "misled," in stating the different hypotheses upon which the jury should consider the evidence; and the few omissions strictly to observe and apply this issue were effectively supplied by the special instruction denying the right of recovery "if the plaintiff understandingly settled his claim and was not misled or deceived by the defendant in any way." When considered in connection with the evidence and the instructions as an entirety, the true interpretation of the verdict is that the release was procured by misrepresentation and fraud; and, unless the evidence does not as counsel claims tend to support such an issue, we must conclude that the errors complained of in the charge were formal rather than material.

[2, 3] It is contended that the representations made by the physician and the claim agent must be regarded as expressions of opinion rather than statements of fact. The first test to which the proofs are subjected is whether the motion to direct should have been granted. It is hardly necessary to say, since it has been said so frequently, that upon such a motion of defendant it is the court's duty to take that view

of the evidence most favorable to plaintiff. It is to be observed that according to plaintiff's testimony the agent was possessed of the substance of what the physician had said to the plaintiff. This is deserving of notice because of the insistence made in argument that the physician was not in the employ or an agent of defendant. Plaintiff's counsel in effect contend that the trial was conducted on the theory that the physicians were in defendant's employ, but that the record is so abbreviated as not distinctly to show this. We have seen that in his charge the trial judge treated the physician who made the statement in question as "the defendant's physician." Now, whether we consider the physician's statement as it is given by the plaintiff without contradiction, or as it is given by the agent through his apparent repetition of the statement, we cannot think that the representation as to plaintiff's complaint of injury to his loins and groin was a bare expression of opinion; it was more than this; its tendency and effect were clearly to influence the plaintiff and to bring about the settlement now in issue. In Lumley v. Railroad Co., 76 Fed. 66, 22 C. C. A. 60 (C. C. A. 6), which, it is true, was a suit in equity to set aside an alleged fraudulent release, a question arose upon demurrer to the bill concerning the effect that should be given to a statement of defendant's physician in respect of a complaint made by Lumley of pain in his shoulder. The physician's statement was made with reference to a settlement and to a time during which Lumley would be unable to resume his work; and in speaking of the duty of the physician in such circumstances Judge Lurton said (76 Fed. 70, 22 C. C. A. 64):

"To say to him [Lumley] that the pain of which he complained was sympathetic, and was caused by the fracture below his elbow, was a positive misrepresentation of the truth, and an operative fraud."

We call attention to this only for the evidential weight that was there attached to the physician's statement; it was not regarded simply as an "erroneous opinion," as counsel claim in respect of the statement now under consideration. The form of release in the Lumley Case differs from the present one in this, that the injuries settled for in that case were specified in the release, while here the injuries covered by the present form of release were not; and the settled rule there followed in substance is that general language following injuries mentioned in a release will in its scope and effect be restricted to those particular injuries. Lumley Case, 76 Fed. at page 71, 22 C. C. A. 60; Texas & Pacific Ry. Co. v. Dashiell, 198 U. S. 521, 527, 528, 25 Sup. Ct. 737, 49 L. Ed. 1150; Union Pacific Ry. Co. v. Artist, 60 Fed. 365, 367, 9 C. C. A. 14, 23 L. R. A. 581 (C. C. A. 8). This rule, however, cannot impair the evidential character and weight that should be accorded to the statement made by the physician and repeated by the claim agent in the instant case. The settlement here occurred shortly after the accident happened, and on a relief train which seems to have been sent for the purpose of continuing the trips of those who were on the derailed train to their destinations as far at least as Memphis; the claim agent was on this relief train and engaged in securing settlements with passengers in addition to the plaintiff; and when it is recalled that the agent appears to have known what the physician had said to plain-

tiff, it would seem that the agent and the physician alike were under strong obligations either to make truthful statements to plaintiff, or none at all, concerning his complaint of injury in his loins and groin. The evidence tends to show that these statements were relied on by plaintiff in entering into the settlement. It results that so far as the relevancy and weight of the evidence are concerned, the case was rightly submitted to the jury, unless the form of the present release required the action to be docketed on the equity side of the court below and there heard and disposed of upon appropriate issues before recovery could be allowed if at all for the damages.

[4, 5] It is a long-settled rule that fraud which enters into the execution of an instrument may be proved at law as well as in equity. Hartshorn v. Day, 19 How. 211, 223, 15 L. Ed. 605; George v. Tate, 102 U. S. 564, 570, 26 L. Ed. 232. The rule prevailing in this court (Wagner v. International Ins. Co., 90 Fed. 395, 404, 33 C. C. A. 121), is that in a suit at law it is proper for the plaintiff "to meet a plea of release by a replication that the release was obtained by fraud, whether the fraud is in the execution, or in misrepresentation as to material facts inducing execution." This rule was laid down by Judge Taft, and it does not differ in principle from that stated and supported by Judge Lurton when considering a sealed instrument in the Lumley Case, supra, and who said (76 Fed. 73, 22 C. C. A. 67):

"If the release had in fact been procured by fraud, he (the plaintiff) could have shown this at law, if the fact that the release was under seal [had been] out of the way."

And this was approved in the Wagner Case, 90 Fed. 404, 33 C. C. A. 121.

We appreciate the claim of counsel that the rule of this court as thus pointed out is in conflict with the rule of the Supreme Court, and that it has not met with entire approval in some of the other federal courts. It is sufficient for present purposes to refer to the Supreme Court rule alluded to, as Mr. Justice Swayne stated it, in George v. Tate, supra, 102 U. S. 570, 26 L. Ed. 232:

"It is well settled that the only fraud permissible to be proved at law in these cases (the procurement of a bond in that case) is fraud touching the execution of the instrument, such as misreading, the surreptitious substitution of one paper for another, or obtaining by some other trick or device an instrument which the party did not intend to give. * * * The remedy is by a direct proceeding to avoid the instrument." [1]

We think the decision in that case and the decisions in other cases of a kindred character are sufficiently distinguished by the fact that they deal with sealed instruments, and so, for that reason alone, the rule in the Wagner Case cannot be said to be in conflict with those decisions. Indeed, after reviewing many decisions concerning the rule

[1] We assume that the act passed March 3, 1915, providing that "in all actions at law equitable defenses may be interposed by answer, plea, or replication without the necessity of filing a bill on the equity side of the court," etc. (38 Stat. 956, c. 90, § 274b), is not applicable here, for the reason that the instant case was commenced October 27, 1913.

applicable to sealed instruments, it was said in the Wagner Case, 90 Fed. 404, 33 C. C. A. 121:

"Except for the peculiar sanctity anciently attaching to a sealed writing at common law, which is now disappearing, it is difficult to see how there could be any doubt about the right in an action at law to avoid a release by a reply of fraud. The release or surrender is a contract (and in the case at bar not under seal), in which, for a valuable consideration, the releasor agrees to give up all claim and interest in his right of action. In the case of a contract of sale of personal property, a party may, by tendering back either the money or the property, as the case may be, rescind the sale for fraudulent misrepresentation as to any material fact inducing him to enter into the contract, and, if sued on the contract, may plead such rescission and justify it. Why may not one on the same ground and in the same way rescind a release, or, when it is produced against him as a bar to an action, avoid it by showing the fraud? * * * This is an ordinary remedy as to all other contracts. Leake, Cont. 320, 321. Why not as to this? On page 802 Mr. Leake says: 'In the case of a releasing creditor having been induced to give the release by the fraud of the debtor, he may avoid it at his election without the aid of the court, and he may meet a plea of release in an action by replying that the release was obtained by fraud.'"

While the release involved in the instant case is in form a sealed instrument, yet long prior to its execution the use of such seals was abolished in Tennessee by statute, which declares that:

"The addition of a private seal to an instrument of writing hereafter made, shall not affect its character in any respect." Shannon's Code (Ed. 1895) § 3213.

Clear and positive enactment like this cannot be aided by construction; its intent was at once to abolish the private seal and to destroy the accustomed effect of such a seal; the statute is more sweeping than that of Michigan, which was under consideration by this court in Wabash Western Ry. Co. v. Brow, 65 Fed. 941, 952, 13 C. C. A. 222.

Further discussion is unnecessary. After careful consideration of all the assignments we are satisfied that none of them presents reversible error. The judgment is affirmed, with costs.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes